## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JUSTINE CONWAY,** | |
| *Plaintiff,* | |
| **v.** | **Civil No. 1:21-cv-00502-JRR** |
| **KILOLO KIJAKAZI, Commissioner,** **Social Security Administration,**[1] | |
| *Defendant.* | |

### MEMORANDUM OPINION

This matter comes before the court on Defendant Commissioner of the Social Security Administration Kilolo Kijakazi's Motion to Dismiss.  (ECF No. 21; the "Motion.")  The court has reviewed all papers.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, by accompanying order, the Motion will be granted.

### BACKGROUND[2]

*Pro se* Plaintiff Justine Conway filed this action against Defendant Commissioner of the Social Security Administration ("SSA").[3]  (ECF No. 9; "Amended Complaint.")  Plaintiff alleges that Defendant discriminated and retaliated against her during her employment at SSA in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Civil

---

[1] Plaintiff filed suit against "Commissioner of the Social Security Administration."  (ECF No. 9 at 1.)  "Title VII requires that a plaintiff who files a civil action claiming employment discrimination must name the head of the allegedly discriminating department or agency as the defendant."  *Simmons v. Shalala*, 946 F. Supp. 415, 418 (D. Md. 1996) (citing 42 U.S.C. § 2000e–16(c)).  "The head of the department or agency is the only proper defendant."  *Id.*  Therefore, the proper Defendant in this case is Kilolo Kijakazi, in her capacity as Acting Commissioner of the Social Security Administration.

[2] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Amended Complaint.  (ECF No. 9.)

[3] As stated above, while Plaintiff did not name Kilolo Kijakazi, the proper Defendant is Kilolo Kijakazi, in her capacity as Commissioner of the SSA.

Service Reform Act of 1978 ("CSRA"), the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 ("No Fear Act"), and the Maryland Fair Employment Practices Act ("FEPA"), MD. CODE ANN., STATE GOV'T § 20-602.  (ECF No. 9 at 5.)[4]

Plaintiff is an African-American female and has been employed at SSA for more than 32 years.  (ECF No. 9 at 14.)  In 1997, Plaintiff began working as a union representative for SSA's bargaining unit employees, which included "(a) negotiating on behalf of bargaining unit employees to eliminate or mitigate SSA's proposed disciplinary actions against them; (b) assisting bargaining unit employees with their workers' compensation claims, under [t]he Federal Employees' Compensation Act (FECA) which provides coverage, such as wage replacement, for employment-related injuries; and (c) assisting bargaining unit employees with filing EEO charges of discrimination against SSA."  *Id.*  Plaintiff alleges that such job duties "set about a level of strife" between her and SSA's management team, in part, because it required Plaintiff to engage in sensitive issues that adversely impacted SSA.  *Id.*

In September 2014, Plaintiff resigned from her position as a union representative and joined SSA's management team.  (ECF No. 9 at 14.)  Plaintiff alleges that SSA's management team "created a hostile and offensive working environment . . . by frequently harassing her for her prior union-related and EEO activities involving SSA."  *Id.*  In November 2015, Plaintiff received her PACS Performance Plan Managers/Supervisors Appraisal ("performance review").  *Id.* at 14. The performance review includes an element average rating (*i.e.*, overall average performance rating) and individual element ratings (*i.e.*, individual ratings in specific performance categories). *Id.* at 10-11, 15.  On performance reviews, the highest numerical rating Plaintiff could receive was a 5.0.  *Id.*  On her November 2015 performance review, Plaintiff received an element average of

---

[4] The page numbering is inconsistent in the Amended Complaint; therefore, the court cites to the page numbers as they appear on the top of the Amended Complaint filed through ECF.

3.7.  *Id.* at 10, 15.  Plaintiff alleges that the 3.7 score for her element average included, in part, 5.0 ratings that she received in her individual elements of participation and demonstration of job knowledge.  *Id.* at 14.   Plaintiff alleges that sometime after her November 2015 performance review, SSA's Director, Yvette Farmer, and Deputy Director, R. Gaylord Brown, expressed "their disapproval of her receiving a 5 as a new supervisor."  (ECF No. 9 at 10.)  Specifically, Plaintiff alleges that Farmer and Brown communicated to her that a 5.0 rating was too high for a new supervisor "since new employees have yet to demonstrate mastery of their position."  *Id.* at 10-11.  Subsequently, in 2016, Plaintiff received a lower element average and individual participation rating; however, Plaintiff's score for demonstration of job knowledge remained the same.  (ECF No. 9 at 11, 15.)

Plaintiff alleges that in June 2017, her section manager, Darlene Parker, visited her workstation while she was in a meeting and spoke "irritably about a discrepancy with an overtime report;" as the conversation continued, Parker became hostile, yelled, and swung her arms over Plaintiff's head.  (ECF No. 9 at 15.)  On August 30, 2017, Plaintiff emailed SSA's Deputy Director, Stephanie Harrison, and copied Farmer, to report that Parker "was harassing her by threatening her and calling her 'union girl.'"  *Id.*  Plaintiff alleges that instead of offering to intervene, Harrison recommended that Plaintiff and Parker meet to discuss Plaintiff's concerns.  *Id.*  On August 31, 2017, Plaintiff emailed Harrison and communicated that "Parker was harassing her by means of undermining her authority as supervisor of her unit by taking away some of her supervisory duties and excluding her from the section activities."  *Id.*  On September 6, 2017, Plaintiff emailed Farmer to make her aware of the communications with Harrison and noted that Harrison still had not reached out to her to address her complaint about Parker.  (ECF No. 9 at 15-16.)  On October 2, 2017, Plaintiff emailed Harrison and Farmer to report further harassment by Parker.  *Id.* at 16.  In

October 2017, on her performance review, Plaintiff's overall element average dropped to a level 3. *Id.*

Plaintiff alleges that on January 31, 2018, in response to the emails Plaintiff previously sent to Harrison and Farmer, Parker retaliated against her by suggesting that SSA issue a proposal to suspend her for two days. (ECF No. 9 at 16.) On March 9, 2018, Farmer issued a decision to suspend Plaintiff for two days. *Id.* On March 20, 2018, Plaintiff filed a grievance with SSA's Stage 2 official, Assistant Regional Commissioner, Patrick L. Robinson, noting her disagreement with the suspension. *Id.* On March 26, 2018, Plaintiff returned to work after her two-day suspension. *Id.*

Plaintiff alleges that on April 4, 2018, Parker continued to harass her "by treating her unfairly through her time and attendance when she denied Plaintiff's request to be temporarily removed from the D-tour . . . so that she could attend to her father's advanced medical condition."[5] (ECF No. 9 at 17.) Plaintiff alleges that Parker adjusted tours for other supervisors when requested for family reasons. *Id.* On April 19, 2018, Parker allegedly harassed Plaintiff again by "abruptly changing her original work schedule." *Id.* On April 23, 2018, Plaintiff requested EEO counseling because Parker's alleged harassment continued. *Id.* On June 1, 2018, after Plaintiff received the final EEO counseling report, Plaintiff was advised she had the right to file an EEO complaint. *Id.*

On June 11, 2018, Plaintiff filed an EEO complaint against SSA, naming Parker and Farmer, alleging retaliation and harassment. (ECF No. 9 at 17.) Plaintiffs alleges that on June 25, 2018, Parker retaliated against her by barging into her workstation, talking over her while Plaintiff was in a meeting, and instructing employees not to follow Plaintiff's instructions. *Id.* Plaintiff further alleges that in October 2018, after Parker submitted her affidavit responding to Plaintiff's

---

[5] D-Tour refers to Plaintiff's specific "tour of duty"—hours and days of the week that Plaintiff is scheduled to work. Plaintiff's schedule on the D-Tour included working from 11:00 a.m. – 7:30 p.m. (ECF No. 9 at 17.)

EEO charge, Parker gave her a higher rating in her individual element for participation on her performance review. *Id.* at 11. Plaintiff alleges that Parker and Farmer continued to retaliate against her from September 28, 2018, until February 19, 2019. *Id.* at 18.

On November 20, 2020, the EEO issued a decision on Plaintiff's June 2018 EEO charge. (ECF No. 1-2 at 1, 5, 10.) The Administrative Judge granted summary judgment in favor of the Agency, reasoning that Plaintiff had "not provided sufficient evidence to establish a prima facie case of hostile work environment because she [had] not shown that the Agency subjected her to unwelcome harassment based on prior EEO activity." *Id.* at 4, 5. On December 2, 2020, Plaintiff received the SSA's final order and Notice of Right to Sue letter notifying Plaintiff that she had 90 days to file a civil action in federal court.[6] (ECF No. 9 at 22.)

Plaintiff alleges that on June 4, 2019, she filed a second EEO charge against SSA "based on reprisal for the frequent harassment she endured from the Agency's Section Manager Darlene Parker and Director Yvette Farmer, after each submitted her affidavit in the instant case." (ECF No. 9 at 18.) Plaintiff alleges that the June 2019 EEO charge is pending assignment to a new Administrative Judge. *Id.*

On February 25, 2021, Plaintiff commenced this action by filing a complaint for employment discrimination. (ECF No. 1; "the Complaint"). On June 9, 2022, Plaintiff filed an Amended Complaint, which sets forth four counts: (I) Title VII; (II) CSRA; (III) No Fear Act; and (IV) FEPA. (ECF No. 9 at 4.) The prayer for relief seeks: "(1) Promotion to Grade 13; (2) Provide

---

[6] Attached to Plaintiff's Complaint is the Right to Sue letter for Plaintiff's first EEO charge. (ECF No. 1-2 at 8.) Plaintiff did not attach the Right to Sue letter to her Amended Complaint; however, the court may consider "exhibits attached to the original complaint that are 'integral and explicitly relied on in the [amended] complaint,' and whose authenticity is not challenged.'" *Jeffrey M. Brown Assocs. v. Rockville Ctr., Inc.*, 7 Fed. Appx. 197, 202 (4th Cir. 2001) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The Right to Sue letter is integral to the Amended Complaint, because Plaintiff's entitlement to pursue her Title VII claims arises, in part, from her compliance with the EEO process. Further, Plaintiff relies upon the notice in her Amended Complaint, and Defendants do not challenge its authenticity. Therefore, the court may properly consider it for purposes of resolving the Motion.

developmental programs; (3) Relocated from the [Baltimore Teleservice Center] BATSC; (4) Vacate suspension and restore pay with interests; (5) An open form of transparency; and (6) $150,000 for the emotional and physical harm caused by abuse, harassment and retaliation." (ECF No. 9 at 25.)

Defendant moves to dismiss on several grounds: (1) the No Fear Act does not provide for a private right of action; (2) Plaintiff fails to establish a waiver of sovereign immunity in order to maintain her FEPA claim; (3) Plaintiff fails to plead a CSRA claim; (4) Plaintiff failed to exhaust her administrative remedies as to her CSRA claim; and (5) with regard to Plaintiff's Title VII claim, Defendant argues that: (i) the court should not consider Plaintiff's allegations post-dating October 2018 because Plaintiff failed to exhaust her administrative remedies; and (ii) Plaintiff fails to state a claim involving the allegations prior to October 2018.  (ECF No. 21 at 5-8.)

## LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).  Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge.  *Id.*  A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction."  *Id.*  A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true."  *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject

matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")).  "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

**Federal Rule of Civil Procedure 12(b)(6)**

"'The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling [her] to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist.

LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F.

Supp. 3d 521, 526 (D. Md. 2015)).

## ANALYSIS

As an initial matter, the court is ever-mindful that "*pro se* pleadings are liberally construed

and held to a less stringent standard than pleadings drafted by lawyers."  *Gray v. Wash. Metro*

*Area Transit Auth.*, No. DKC-16-1792, 2017 U.S. Dist. LEXIS 18223, *6 (D. Md. Feb. 8, 2017)

(citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)).  "Liberal construction means that the court

will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts

available; it does not mean that the court should rewrite the complaint to include claims never

presented."  *Id.*

## I.   <u>Sovereign Immunity—12(b)(1) Motion</u>

Defendant argues that Plaintiff's FEPA claim fails because "Plaintiff has not identified a

waiver of sovereign immunity."  (ECF No. 21 at 6.)

In *Curtis v. Pracht*, 202 F. Supp. 2d 406 (D. Md. 2022), the court succinctly explained:

> The United States and its officers may not be sued unless federal
> legislation specifically authorizes the suit. Absent a waiver,
> sovereign immunity shields the Federal Government and its
> agencies from suit. A waiver of sovereign immunity cannot be
> implied but must be unequivocally expressed. Plaintiffs bear the
> burden of demonstrating an unequivocal waiver of sovereign
> immunity, and any waiver of sovereign immunity must be strictly
> construed in favor of the United States. When a plaintiff has failed
> to establish a waiver of sovereign immunity, a federal court lacks
> jurisdiction to hear the case.

*Id.* at 418-19 (internal citations and quotations marks omitted).  Further, "[s]uits against

government agents acting in their official capacities are also barred by sovereign immunity because

they are considered suits against the United States itself."  *Id.* at 418 n.7; *see also Nzongola v.*

*Astrue*, 863 F. Supp. 2d 25, 28-29 (D.D.C. 2012) (holding that "[t]he United States is immune

from suit without its prior consent, unless it expressly has waived immunity and consents to be sued").

Here, Plaintiff sues the Commissioner of the Social Security Administration, Kilolo Kijakazi, in her official capacity. Thus, the action is against the United States. *Curtis*, 202 F. Supp. 2d at 418 n.7; *see Nzongola*, 863 F. Supp. 2d at 29 (citation omitted) (noting that "[a]n action brought against a federal agency, such as the SSA, is effectively one brought against the United States."). Plaintiff fails to allege that the United States waived its immunity or consented to be sued under FEPA; and the court is aware of no such waiver. Accordingly, this court lacks subject matter jurisdiction over Plaintiffs' FEPA claim against Defendant. The Motion will be granted as to Plaintiff's FEPA claim.[7]

## II.   **Federal Rule of Civil Procedure 12(b)(6)**

### A.   **No Fear Act**

Defendant argues that Plaintiff's claim under the No Fear Act fails because the "statute does not provide a private right of action." (ECF No. 21 at 5.)

"The No Fear Act is a reporting statute that 'require[s] that Federal agencies be accountable for violations of antidiscrimination and whistleblower protection laws; to require that each Federal agency post quarterly on its public Web site, certain statistical data relating to Federal sector equal employment opportunity complaints filed with such agency; and for other purposes.'" *Bryant v. McAleenan*, No. ELH-18-1183, 2019 WL 4038565, at *14 (D. Md. Aug. 27, 2019) (quoting 107 P.L. 174, 116 Stat. 566)). The No Fear Act "does not provide a private cause of action." *Williams v. Spencer*, 883 F. Supp. 2d 165, 182 (D.D.C. 2012); *see Glaude v. United States*, 248 Fed. Appx.

---

[7] Even if Plaintiff could bring a claim pursuant to FEPA, the claim would fail for the same reasons her Title VII claim fails. *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 408 n.1 (D. Md. 2015) (analyzing Title VII claims and FEPA claims together because "FEPA is the state analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII"); *see* Section II(C), *infra*, regarding Plaintiff's Title VII claim.

175, 177 (Fed. Cir. 2007) (noting that "[o]f the few courts that have considered claims made under the No Fear Act, none have found that the Act provides a private cause of action or creates a substantive right for which the government must pay damages.").

Accordingly, the Motion will be granted as to Plaintiff's No Fear Act claim.

**B.    CSRA**

Defendant argues that Plaintiff's CSRA claim fails on two fronts: (1) failure to exhaust administrative remedies; and (2) failure to state a claim.  (ECF No. 21 at 7.)

Under the CSRA, "[a]ny employee or applicant for employment who is adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision."  5 U.S.C. § 7703(a)(1) (1988).  "Whereas Title VII provides for judicial review of claims previously shepherded through the EEO process, the Civil Service Reform Act authorizes judicial review of final decisions by the MSPB."  *Vinieratos v. U.S., Dep't of Air Force Through Aldridge*, 939 F.2d 762, 773 (9th Cir. 1991).

Plaintiff does not allege she filed a complaint with the MSPB or that she seeks judicial review of an MSPB decision.  Further, "[t]he exclusive remedy for racial discrimination in federal employment is provided for by Title VII of the Civil Rights Act of 1964."  *Williams v. McCausland*, 791 F. Supp. 992, 998 (S.D.N.Y. 1992).  Accordingly, the Motion will be granted as to Plaintiff's CSRA claim.

**C.    Title VII**

Defendant argues that Plaintiff's Title VII claim fails for two reasons: (1) Plaintiff failed to exhaust her administrative remedies as to her allegations post-dating October 2018; and (2) Plaintiff fails to state a Title VII claim.  (ECF No. 21 at 8-12.)

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326-27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination."). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). Pursuant to the *McDonnell Douglas* standard, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

Title VII further requires a plaintiff to exhaust administrative remedies prior to bringing suit in court. *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)) (explaining that "[i]t is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC"). Although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt." *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast").

### 1.       *Exhaustion of Administrative Remedies*

Defendant argues that Plaintiff failed to exhaust her administrative remedies as to her factual allegations post-dating October 2018; and, therefore, the court should not consider them in analyzing Plaintiff's Title VII claim.  (ECF No. 21 at 8.)

An EEOC charge serves two important purposes: (1) "it notifies the charged party of the asserted violation" and (2) "it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law." *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984).  In *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401 (4th Cir. 2013), the court clearly explained the EEOC process:

> An employee complaining of illegal discrimination must first contact the EEOC and present it with information supporting the allegations. After receiving an employee's intake questionnaire and any other information the employee has provided, the EEOC typically assists the employee with filing a charge. This assistance often includes drafting a charge—as it did here—and then asking the employee to sign it.
>
> The EEOC sends a notice and copy of the charge to the employer. This notice gives the employer the chance to voluntarily conduct its own investigation and attempt to resolve any discriminatory actions internally. Concurrently, the EEOC investigates the charge.
>
> The filing of a charge also "initiates agency-monitored settlement, the primary way that claims of discrimination are resolved." This procedure "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." Prior to making any determination as to the merit of a charge, the EEOC may encourage and facilitate settlement between the parties.
>
> If the EEOC finds "reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." If the EEOC cannot reach a voluntary

> settlement with the employer, the agency may file a lawsuit or issue
> a Notice–of–Right–to–Sue to the employee. If the EEOC does not
> make a reasonable cause determination or the employee requests a
> right to sue, the agency may issue one, thus allowing the employee
> to file suit.

*Id.* at 407 (internal citations omitted).  The exhaustion requirement, therefore, is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  It "serves a vital function in the process of remedying an unlawful employment practice."  *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust [her] administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."  *Chacko*, 429 F.3d at 506.  In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right
> to institute a civil suit.  The allegations contained in the
> administrative charge of discrimination generally limit the scope of
> any subsequent judicial complaint.  [F]actual allegations made in
> formal litigation must correspond to those set forth in the
> administrative charge.  Only those discrimination claims stated in
> the initial charge, those reasonably related to the original complaint,
> and those developed by reasonable investigation of the original
> complaint may be maintained in a subsequent Title VII [or ADEA]
> lawsuit.

*Id.* at 172.  Further, "[t]he Fourth Circuit has held that claims of retaliation for actions that follow the filing of an EEOC charge are reasonably related to the original complaint and thus may be raised for the first time in court."  *Cherry v. Bealefeld*, No. CCB-08-1228, 2010 WL 917421, at *6 (D. Md. Mar. 9, 2010).  With this in mind, the court also recognizes that "EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality.'"  *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th

Cir. 1988).  The court, however, is not "at liberty to read into administrative charges allegations

they do not contain."  *Id.*

Plaintiff alleges that she filed two EEO charges—one in June 2018[8] and one in June 2019.

(ECF No. 9 at 7.)  Specifically, Plaintiff alleges:

> On June 14, 2019, about one year from the date Plaintiff filed a
> charge of discrimination against SSA on June 11, 2018—which was
> based on retaliation and harassment for Plaintiff's prior union-
> related and EEO activities that involved sensitive issues against
> SSA, such as discrimination grievances—Plaintiff filed a second
> EEO charge of discrimination against SSA based on reprisal for the
> frequent harassment she endured from the Agency's Section
> Manager Darlene Parker and Director Yvette Farmer, after each
> submitted her affidavit in the instant case.  That complaint, which
> was originally with the Honorable Judge John A. Henderson Jr., is
> currently awaiting assignment to a new Administrative Judge, since
> the Honorable Judge John A. Henderson Jr. was appointed by
> Attorney General William P. Barr, U.S. Department of [J]ustice, as
> an Administrative Law Judge.

(ECF No. 9 at 18.)  Plaintiff alleges that her supervisors, Parker and Farmer, submitted their

affidavits on September 28, 2018, and October 2, 2018.  *Id.*  In other words, Plaintiff's second

EEO charge involves the alleged retaliation and harassment that occurred after Plaintiff's

---

[8] In Plaintiff's June 2018 EEO charge, the EEOC outlined the issue as follows:

> Whether the Agency subjected [Plaintiff] to harassment based on reprisal (prior
> protected activity) Yvette Farmer, Deputy Director Stephanie Harrison, Section
> Manager Lamour Anderson, and Darlene Parker made offensive and derogatory
> comments and other verbal and physical abuse to [Plaintiff] after March 9, 2018;
>
> > d. Suspended her in March 22-23, 2018;
> >
> > e. Changed her tour of duty, most recently on April 19, 2018;
> >
> > f. Placed a written warning dated October 4, 2017, in her 7B file, which
> > [Plaintiff] never saw and first discovered in March or April 2018;
> >
> > g. Placed a surreptitious false entry into her permanent employment file
> > dated April 28, 2017;
> >
> > h. Engaged in harassing her from January 2018 to April 2018.

(ECF No. 1-2 at 1.)

14

supervisors submitted affidavits in connection with Plaintiff's first EEO charge (*i.e.*, October 2, 2018).  Plaintiff concedes that she has not received a Right to Sue letter with regard to the second EEO charge.  (ECF No. 9 at 18.)

The precise issue is whether the court may properly consider Plaintiff's allegations post-dating October 2018, in light of the fact that Plaintiff filed a second EEO charge.  Plaintiff asserts that the court may consider the allegations post-dating October 2018 because those factual allegations are linked to the case in this court.  (ECF No. 26 at 10.)  The court disagrees.  The court finds instructive *Beck-Pell v. Sheet Metal Workers Local #100*, No. PWG-17-2329, 2019 WL 3841935 (D. Md. Aug. 15, 2019).

In *Beck-Pell*, the plaintiff filed an EEOC charge in 2014 and subsequently received a right to sue letter.  2019 WL 3841935, at *7.  The plaintiff filed a complaint in federal court alleging, among other things, that the defendant retaliated against her after she filed the 2014 EEOC charge. *Id.* at *6.  Subsequently, after filing suit in federal court, the *Beck-Pell* plaintiff filed an additional EEOC charge in 2018 alleging retaliation.[9] *Id.* at *7.  The *Beck-Pell* court explained:

> Because [the plaintiff] filed that EEOC charge, which post-dated the alleged retaliation, the retaliation claim needed to be included in the EEOC charge. As this [c]ourt has explained, the rule from *Nealon* and *Hill* does not apply if the claims could have been raised in [the] EEOC charge, but were not.
>
> One of the primary reasons for allowing plaintiffs to allege retaliation for the first time in court is that plaintiffs who face retaliation after filing one EEOC charge will likely be reluctant to file additional charges for fear of further reprisal. Yet if a plaintiff faces retaliation and then chooses to file an EEOC complaint, there is little reason not to require her to exhaust her retaliation claim by including it in her EEOC charge. Therefore, the normal rules of exhaustion must apply to claims of retaliation that predate the filing of an EEOC charge.

---

[9] The court notes that the instant case differs from *Beck-Pell* in that Plaintiff filed a second EEO charge before she filed the instant case in federal court; however, this distinction is immaterial to the instant issue.

> Indeed, [the plaintiff] did include the retaliation charge in the 2018
> EEOC charge. Yet, more is required before filing suit: receipt of, or
> at least entitlement to, a right-to-sue letter.   [The defendant]
> contends that the 2018 EEOC charge is still pending, and [the
> plaintiff] has not shown otherwise.

2019 WL 3841935, at *7 (internal citations and quotation marks omitted).  Accordingly, the *Beck-Pell* court dismissed the plaintiff's retaliation claim for failure to exhaust administrative remedies.

The court finds further guidance from *Brooks v. United Parcel Service Inc.*, No. DKC-20-2617, 2021 WL 4339194 (D. Md. Sept. 23, 2021).  There, the plaintiff employee filed two EEO charges against her employer, UPS: one in 2012 and a second in 2018.  *Id.* at *3.  Because she filed multiple charges, UPS took the position that she was barred from pursuing a Title VII claim for retaliation that allegedly occurred in the interim between the 2012 and 2018 charges but which the plaintiff had not complained of at the administrative level.  *Id.* at *7.  The *Brooks* court disagreed, and reasoned:

> As Judge Chuang recently observed, no authority requires, in cases
> with multiple EEOC charges, [that] follow-on retaliation claims
> must be exhausted through subsequent charges[.] The mere fact that
> a plaintiff filed a later EEOC charge does not mean the conditions
> that justify allowing post-charge retaliation claims are absent. Many
> such plaintiffs may have feared further retaliation after filing their
> first charge. And many such plaintiffs' subsequent charges may be
> about events wholly unrelated to the prior retaliation.
>
> Filing a later charge does not undermine the policy allowing post-
> charge retaliation claims if it is sufficiently disconnected from the
> earlier charge. A subsequent charge is more likely to be
> disconnected where it is distant in time from the earlier charge,
> alleges different events, and is filed after the pendency of the EEOC
> investigation into the earlier charge. By contrast, a plaintiff might
> be expected to include her retaliation claims in a later charge where
> that charge was close in time to the earlier charge, was part of a
> series of charges, and alleged the same or related events. This is
> consistent with those decisions that have required exhaustion
> through a later charge because they typically feature a plaintiff that
> has filed several EEOC charges in close succession.

2021 WL 4339194, at *7-8 (internal citations and quotation marks omitted).  The *Brooks* court found that the plaintiff's second EEOC charge in 2018 was not closely connected to her first EEOC charge filed in 2012; while the conduct alleged was similar, the second charge referred to different people and time periods.  *Id.* at *8.  Accordingly, the *Brooks* court concluded that the plaintiff could maintain a retaliation claim for the filing of her first 2012 charge without exhausting such claims through the second 2018 charge (or any other post-2012 charge).  *Id.*

In the instant case, Plaintiff's second EEO charge filed in June 2019 is closely connected to her first EEO charge filed one year earlier: the conduct alleged is similar and the same people are the alleged bad actors.  Further, Plaintiff expressly alleges in her Amended Complaint that the second EEO charge includes the allegations involving retaliation.  (ECF No. 9 at 18.)   Plaintiff allegedly faced retaliation and then chose to file the second EEO charge; thus, there is "little reason to not require her to exhaust her retaliation claim."  *See Beck-Pell, supra.*  In other words, because Plaintiff's second charge remains pending and includes the alleged retaliation Plaintiff experienced after she filed her first EEO charge, the normal rules of exhaustion apply.  *Id.*  Therefore, to file suit, Plaintiff must either have received or have entitlement to a right-to-sue letter.  *Id.*  Plaintiff concedes that she has not received a right-to-sue letter as to her second EEO charge.  Accordingly, Plaintiff has not exhausted her administrative remedies as to the second EEO charge and the court will not consider Plaintiff's factual allegations post-dating October 2018.

## 2.      *Title VII Employment Discrimination*

Liberally construing Plaintiff's Amended Complaint, Plaintiff alleges two forms of race and gender discrimination: (1) failure to promote; and (2) unequal terms and conditions of her employment.

At the motion to dismiss stage, "[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination under the evidentiary framework set forth in *McDonnell Douglas Corp.*" *Holloway v. Md.*, 32 F.4th 293, 298 (4th Cir. 1973).  "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

"In employment discrimination cases, a plaintiff must plead that (1) her employer took an adverse employment action against her, (2) because of her protected status." *Brooks*, 2021 WL 4339194, at *12; *see McCleary-Evans*, 780 F.3d at 585 (explaining that the plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute").  "[A] complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *McCleary-Evans*, 780 F.3d at 585 (quoting *Twombly*, 550 U.S. at 555).  "To allege that an employer acted because of an employee's protected status, there must be some connective thread between the alleged mistreatment and the protected status." *Brooks*, 2021 WL 4339194, at *12 (internal quotation marks omitted).

The Amended Complaint does not allege any facts to support a reasonable inference of bias or discriminatory animus against Plaintiff based on her race or gender.  Plaintiff alleges that she is an African American female, but does not allege any facts to suggest that any of the actions taken against her by SSA or its employees were motivated by, or based on, race or gender.  The Amended Complaint contains no allegations that Defendant failed to promote her or placed her under unequal terms of employment on the basis of Plaintiff's race or gender.  While Plaintiff alleges that her section manager "adjusted tours for other supervisors[] when they requested a

change in their tour to assist their family[,]" she fails to allege that Defendant "took actions against her that similarly situated employees of other races [] did not receive . . . ." *Harris v. Charles E. Smith Life Communities*, No. MJM-21-1242, 2022 WL 4777592, at *6 (D. Md. Oct. 3, 2022); *see Haynes v. Waste Connections Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (explaining that "to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'" (quoting *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010)); and *Brooks*, 2021 WL 4339194, at *12 (noting that "[f]or failure to promote claims, allegations that a plaintiff was rejected for a position in favor of a less qualified candidate from outside her protected class can support an inference that the employer acted because of the plaintiff's protected status").

The Amended Complaint further fails to identify a comparator's race or gender, and job titles or responsibilities. *See Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) (explaining that "[b]ecause two coworkers treated differently for the same offense might not be similarly situated if they have different job responsibilities or circumstances, a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination"); *see Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (2010) (affirming district court's conclusion that the complaint failed to state a Title VII race discrimination claim where the complaint named a comparator but failed to allege facts suggesting the comparator was similarly situated or "that race was the true basis for [the plaintiff's] termination").

Accordingly, to the extent Plaintiff alleges that Defendant discriminated against her by

failure to promote or unequal terms and conditions of employment, she fails to allege the barest of requisite facts to support a claim of race- or gender-based discrimination.

### 3.    *Retaliation*

Plaintiff alleges that Defendant unlawfully retaliated against her by subjecting her to a hostile and offensive working environment because of her participation in union and EEO activities.  (ECF No. 9 at 5-6.)

To state a claim for retaliation, Plaintiff must allege that (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse employment action.  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).  Relevant here, "[r]etaliation claims under Title VII can be based on an employer's retaliatory creation of a hostile work environment."  *Fordyce v. Prince George's Cnty. Md.*, 43 F. Supp. 3d 537, 552 (D. Md. 2014).  "If the adverse employment action is creation of a hostile work environment, the plaintiff must also allege the factors for a hostile work environment claim."[10]  *Id.* at 552 n.10.  In *Clarke v. DynCorp Intern. LLC*, the court explained:

> Some courts consider a hybrid hostile work environment claim as part of an accompanying retaliation claim. To show that a hostile work environment satisfies the adverse employment action prong of the prima facie case for retaliation, [the plaintiff] must show that the environment well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.
>
> Other district courts have analyzed retaliatory hostile work environment claims under a hybrid framework including the prima facie elements of the hostile work environment along with the adverse action and causal connection elements of a retaliation claim. In order to establish a hostile work environment claim, a claimant

---

[10] To maintain a claim for hostile work environment, a plaintiff must allege "that the harassment was (1) unwelcome, (2) based on [a protected activity], (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [the employer]."  *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174-75 (4th Cir. 2009).

> must demonstrate that the alleged conduct: 1) was unwelcome; 2) resulted because of . . . gender, disability, or prior protected activity; 3) was sufficiently severe or pervasive to alter the conditions of [her] employment; and 4) was imputable to [her] employer. A hostile work environment is permeated with discriminatory intimidation, ridicule, and insult not caused by the mere utterance of an . . . epithet which engenders offensive feelings in an employee.

962 F. Supp. 2d 781, 790-91 (D. Md. 2013) (internal citations and quotations omitted).

Under either analysis, Defendant argues, Plaintiff's retaliatory hostile work environment claim fails because there is no plausible connection between the protected activity and the adverse employment action. (ECF No. 21 at 10.) In other words, Defendant suggests that even if Plaintiff adequately alleged protected activity and adverse employment action on the basis of hostile work environment, she fails to allege a plausible connection between the two. The court agrees.

"[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a prima facie case of causation where the temporal proximity is 'very close.'" *Jenkins v. Gaylord Ent. Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)); *see Hall v. Greystar Mgmt. Servs., L.P.*, 637 Fed. Appx. 93, 99 (2016) (explaining that "a court will not infer a causal link based on temporal proximity alone unless the adverse action occurred very close to, or shortly after, the defendant became aware of the protected activity") (internal citations and quotation marks omitted)). However, "[i]n cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). "Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Id.*; *see Clark v. Snuipa II Inc.*, No. 8:10-cv-02027-AW, 2011 WL

5439000, at *5 (D. Md. Nov. 8, 2011) (concluding that while the complaint fails to allege the dates for the court to consider the temporal proximity, the plaintiff adequately alleged that the defendant fired her because she complained of sexual harassment).

Here, Plaintiff relies on temporal proximity alone—the only allegations in the Amended Complaint that suggest causation is the temporal proximity between Plaintiff's alleged protected activity and Defendant's alleged adverse action.  *See Hall*, *supra*.  Plaintiff alleges that Defendant began retaliating against her on June 19, 2017, for her protected activity that concluded in September 2014.[11]  (ECF No. 9 at 15.)  Even if the court were to construe the Amended Complaint to allege that the first retaliatory action leading to a hostile work environment is what Plaintiff viewed as the unfavorable performance review in November 2015,[12] the claim would still fail.  A

[11] Plaintiff alleges that she engaged in a protected activity by "assisting bargaining unit employees with filing EEO charges of discrimination against SSA."  (ECF No. 9 at 14.)  Title VII recognizes two types of protected activity: (1) opposition and (2) participation.  42 U.S.C. § 2000e-3(a).  Relevant here, participation includes discrimination "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  *Id.*  While the participation clause gives broad protection, *see Winslow v. Locke*, No. DKC-09-0071, 2010 WL 1141200, at *6 (D. Md. Mar. 22, 2010) (quoting *Glover*, 170 F.3d at 414) (explaining that "[T]he Fourth Circuit recognized that activities protected by the participation clause are 'essential to the machinery set up by Title VII,' and have, therefore, been given 'exceptionally broad protection'"), it does not encompass "every situation in which a plaintiff is involved in a Title VII proceeding, no matter how passively."  *Correa v. Mana*, 550 F. Supp. 2d 319, 330 (E.D.N.Y. 2008) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 175 (2d Cir. 2005)).

In the instant case, Plaintiff does not allege that she engaged in any activity beyond performing her regular job duties and assigned tasks as a union representative.  *See Correa*, 550 F. Supp. 2d at 330 (explaining that "[i]n order for employees in human resources positions to claim retaliation they need to first clearly establish that they were engaged in protected activities other than the general work involved in their employment").  Plaintiff does not allege that she encouraged employees to file EEO charges or otherwise advocated on behalf of employees in the EEO process.  *See Adams v. Northstar Location Servs., LLC*, No. 09-CV-1063-JTC, 2010 WL 3911415, at *4 (W.D.N.Y. Oct. 5, 2010) (concluding that the plaintiff's actions of investigating a race-based harassment complaint is not a protected activity because the plaintiff was acting within the scope of her duties and she does not allege that she encouraged the employee to file a formal charge or otherwise advocated on their behalf).  Indeed, Plaintiff alleges that Defendant permitted her to use the workweek to assist employees in the EEO process.  (ECF No. 9 at 14.)  Concluding that Plaintiff engaged in a protected activity because of her position as a union representative "would render practically all of her work activities and work product subject to Title VII protection."  *Id.*  Accordingly, Plaintiff has not adequately alleged she engaged in a protected activity.  However, even if Plaintiff adequately alleged a protected activity, her claim still fails. *See* Section II.C.3, *supra*.

[12] While Plaintiff suggests that she suffered an adverse employment action when Defendant dropped her performance appraisal ratings (ECF No. 9 at 10), a poor performance review is generally not considered an adverse employment action.  *See Adams v. Anne Arundel Cnty. Pub. Schools*, 789 F.3d 422, 431 (4th Cir. 2015) (explaining that "poor performance evaluations occur with some frequency in the workplace" and while the analysis of such performance evaluations depends on the circumstances "they are much less likely to involve adverse employment actions than the transfers, discharges, or failure to promote whose impact on the terms and conditions of employment is immediate

span of over a year is generally viewed as too long to establish a causal connection and nothing in the instant case persuades the court otherwise. *See Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017) (finding that the plaintiff cannot satisfy the causation prong because an eight-to-nine-month gap between the protected speech and adverse employment action "is too distant to raise an inference of causation"); *Hall*, 637 Fed. Appx. at 99 (concluding that ten-month lapse between protected activity and adverse employment action "suggests, by itself, no causality at all"); *Booth v. Md.,* 337 Fed. Appx. 301, 310 (4th Cir. 2009) (concluding that the plaintiff failed to establish a causal connection when there was an approximately nine-month gap between protected activity and adverse employment action); *Pascual v. Lowe's Home Centers, Inc.*, 193 Fed. Appx. 229, 233 (4th Cir. 2006) (holding that a three-to-four-month gap between an employer's knowledge of protected activity and the adverse employment action "is too long to establish a causal connection by temporal proximity alone"); *Crockett v. SRA Intern.*, 943 F. Supp. 3d 565, 575 (D. Md. 2013) (finding that the plaintiff failed to "offer any other allegations probative of a retaliatory animus" and "[s]tanding alone . . . temporal proximity of four months is insufficient to suggest causation"); *Beck-Pell*, 2019 WL 3841935, at *7 (concluding that a time span extending beyond two years is too long to establish causal connection essential to retaliation claim).

While the court "may look to the intervening period for other evidence of retaliatory

---

and apparently"); *Van Story v. Washington Cnty. Health Dep't* No. ELH-17-3590, 2019 WL 3340656, at *18 (D. Md. July 25, 2016) (explaining that "[i]n the context of Title VII, the anti-retaliation provision does not protect against petty slights, minor annoyances, and simple lack of good manners"). In *Van Story*, the court explained that "[a] poor performance review or reprimand does not constitute an adverse action unless it causes real harm to [the plaintiff's] employment or is an intermediate step to discharge." 2019 WL 3340656, at *18.

Here, Plaintiff does not allege that poor performance reviews harmed or limited her employment status or workplace opportunities, or led to any other adverse condition or action. Plaintiff does not allege that because of poor performance reviews, she was subsequently discharged, denied leave or a bonus, or placed on a corrective performance plan. Plaintiff does not allege, nor are there allegations to suggest, that Plaintiff's lower performance reviews would have discouraged her, or did discourage her, from claiming workplace discrimination. Accordingly, Plaintiff's allegations fail to support an inference that the alleged retaliation in November 2015 constituted adverse employment action.

animus" when temporal proximity is lacking, even broadly construed in her favor, Plaintiff's Amended Complaint does not allege facts to suggest Defendant engaged in conduct motivated or caused by retaliatory animus during the intervening period (September 2014 through November 2015).  *See Lettieri*, *supra.*  Accordingly, Plaintiff fails to state a plausible claim for retaliatory hostile work environment.  The Motion as to Plaintiff's Title VII claims will be granted.

## CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion to Dismiss (ECF No. 21) is **GRANTED**.


/S/
_____
Julie R. Rubin
United States District Judge

August 10, 2023